**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

LEONARDO GALVEZ

      Plaintiff,                          Civil Action No.

against

JETSMARTER, INC., BRENT HOLLENBACH
and JOHN DOES 1 - 4

                                           **COMPLAINT and**
      Defendants                       **JURY DEMAND**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

      Plaintiff Leonardo Galvez ("Plaintiff" or "Galvez"), by way of complaint against

Defendants Jetsmarter, Inc., Brent Hollenbach and John Does 1-5, states as follows:

### JURISDICTION AND VENUE

1.     This Court has original jurisdiction over this action under 28 U.S.C. §1332 as this

action seeks monetary damages resulting from the Defendants' actions in an amount

exceeding $75,000.00, and there is complete diversity of citizenship between Plaintiff and

all Defendants.

2.     Venue is properly placed in the Southern District of New York pursuant to 28

U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the

claim occurred and the location to which the marketing and advertising was directed.

### PARTIES

3     Plaintiff Galvez is an individual located in Bronx, NY.

4.      Defendant Jetsmarter, Inc. ("Jetsmarter") is a foreign corporation, organized under the laws of the State of Delaware and is registered to do business in the State of Florida. Jetsmarter's world headquarters is located at 500 East Broward Blvd., Fort Lauderdale, Florida.   Jetsmarter allegedly has multiple other points throughout the world.   Jetsmarter markets itself as a company that provides air transportation as an alternative to commercial carriers and private jet ownership.

5.      Defendant Brent Hollenbach ("Hollenbach") is or was a sales agent and representative of Jetsmarter bearing the title "Senior Membership Executive."

6.      John Does 1 – 4 are persons who are the officers or managers of Jetsmarter, who developed and approved the marketing and sales materials and may have otherwise been involve in the fraudulent sales practices made to Plaintiffs.

## FACTUAL BACKGROUND

7.      On or about April, 2015, having seen the advertising material placed into the marketplace by Defendant Jetsmarter about the benefits offered by Jetsmarter, Plaintiff Galvez was contacted by Jetsmarter's representative Hollenbach.   In that conversation, Defendant Hollenbach described the program which Defendant called a "membership" as follow:

-       Free flights for Plaintiff within 3.5 hours from Plaintiff's locations arranged through the usage of two replenishing tokens;
-       Free helicopter and other transportation airport shuttle service;
-       Guaranteed rate lock for renewal at the joined rate.

8.      Based upon Defendants' representations, on or about April 19, 2015, Plaintiff paid the amount of $8,499.00.   Throughout the first year, the program which Plaintiff purchased largely worked in keeping with the parties' agreement.   In fact, in an effort to

obtain renewals, Defendants added additional benefits such as additional free shuttle flights to Los Angeles, helicopter travel to the Hamptons, more jets in the fleet and otherwise.

9.      Prior to his renewal for 2017, Plaintiff received a notice from Defendant Hollenbach that Plaintiff had been selected to upgrade his membership to "Sophisticated." The statement stated that it was made to "elite" members and made by invitation only. This statement was deceptive as the opportunity was open to any person willing to pay the cost.



10.     The "invitation" was followed up two weeks later (February 20, 2017) by another message sent by Defendant Hollenbach conveying a President's Day special that stated that if Plaintiff accepted the "invitation" provided only to "elite" customers and joined at the Sophisticated level by the end of that month, he would receive a $5,000.00 credit against his renewal.   In fact, such amounts and even greater credits were constantly being provided and the conveyed need for urgent, immediate action was a deceptive practice used by Defendants on Plaintiff and the other members as there was no true deadline being imposed.

11.     In March, 2018, approximately one year later, Defendant Hollenbach again notified Plaintiff that he had the opportunity to upgrade to the Sophisticated level.   The program was even further enhanced in that Plaintiff would receive a one year Jetpass (but, he was told, only if he joined by the end of the month – another deception as the offer was provided to persons seeking to join even after the end of the month) which permitted a guest to travel with him.   Plaintiff was also told that if he acted immediately he would be able to reduce the annual $50,000.00 fee to a three year program at the total cost of $97,500.00.   When Plaintiff pointed out that his membership was not up for renewal, he was told "no worries" as a credit for his unused portion on his prior membership would be provided - making the upgrade cost even less to him.



12.     Plaintiff did not have ready funds in order to afford the upgrade to the Sophisticated level.   Thus, Plaintiff borrowed the full amount in order to complete his purchase.   Plaintiff's payment for his Sophisticated upgrade was acknowledged on June 1, 2018.

13.     Within just three weeks of the payment of his funds to Defendants, Plaintiff noticed a substantial reduction in the services provided to him.   Defendant Hollenbach recognized the reduction but stated that he was unaware of the details – instead referring him to another department.



14.     From that point forward, the program availability waned and representatives of

Defendant Jetsmarter became unresponsive. In fact, Weeks would pass without reply.



15.     Plaintiff not only had to suffer with the unavailability of flights, he also came to learn that despite just having purchased a program which was premised upon "free flying," Defendants now required that he pay for 75% of the price of the flights.

16.     Plaintiff has attempted to obtain a return of his purchase price for the services rendered by Defendant, but Defendant has failed and refused to provide the same.

17.     As a result, Plaintiff has suffered damages.


## COUNT I
## Breach of Contract

18.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

19.     Plaintiff and Defendant entered into an on-line agreement through which in exchange for the payment of $97,500.00, Defendants Jetsmarter, through its agent Brent Hollenbach, agreed to provide certain travel benefits to Plaintiff.

20.     The agreement entered into by the parties was in a format which was later changed online by Defendants.  Defendants failed to ever provide to Plaintiff an original copy after its execution and entry.

21.     After Plaintiff was able to use Defendant's services on only a single occasion, Plaintiff came to learn that Defendant Jetsmarter had unilaterally changed the program and that the program offered to Plaintiff – and for which he had purchased – was no longer being offered.   Plaintiff was now required to pay for his flights.

22.     As a result of these changes, Plaintiff has been unable to utilize the services for which he contracted and purchased.

23.     Based upon Defendants' own assessment of the cost which would be incurred by Plaintiff in order to retain duplicate services, the "benefit of the bargain," Plaintiff would be required to pay approximately $95,633.05 per month. For the three year period contemplated under his membership, Plaintiff has suffered damages of $3,442,789.80.



24.     As a result of their actions and conduct, Defendants have breach the contract with Plaintiff and caused Plaintiff damages.

## COUNT II
## Violation of Good Faith and Fair Dealing

25.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

26.     Intrinsic in every contract is the duty to utilize good faith and fair dealing and

imposes on each party a duty of good faith and fair dealing in its performance. Common law calls for substantial compliance with the spirit, not just the letter, of a contract in its performance.

27.     In entering into an agreement there exists an implied covenant that the parties will act in good faith and deal fairly, and that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. Defendant Jetsmarter did not act consistent with this principal when it unilaterally changed the very basis of the agreement entered into with Plaintiff.

28.     As a direct and proximate result of Defendant JetSmarter's conduct, Plaintff has suffered damages.

## COUNT III

### (Violation of GBL §349, Unfair Trade Practices)

29.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

30.     In attempting to advertise, market and sell the flight services, Defendants Jetsmarter Hollenbach made an express representation that Plaintiff's sole obligation was to make his payments, in full and in advance, and in exchange therefore he would receive all of the benefits set forth in detail in Paragraph 7 hereof which was later even enhanced by the Sophisticated membership.   Defendants specifically advertised that a customer would be able to obtain a seat on its jets with no additional charge.  This statement was false.

31.     The marketing platform was developed by John Doe 1 and 2, fictional persons who will be named after discovery is conducted, and such marketing was approved by

Jetsmarter's supervisors/officers John Does 3 and 4, also fictional persons who will be named after discovery is conducted.

32.     With weeks after renewing with Defendants in June, 2018, Plaintiff discovered that the program sold to him would no longer be adhered to by Jetsmarter.  First, the number of flights were reduced and then Plaintiff learned that he would be be permitted to utilize only 25% of the travel cost in credits and incurring the balance of the travel cost through separate payment.

33.     Defendants represented and sold to Plaintiff a three year which was program represented as requiring only a single, one-time payment under which Plaintiff would be permitted to fly on private jets - without further cost or expense.   This representation was false and deceptive. Within weeks of purchasing the program form Defendants, Plaintiff was informed that the program as structured was unilaterally altered and that the promised benefits would no longer be offered.   In fact, in order to avail himself of the services for which he paid with borrowed moneys, Defendant is disallowed any free travel whatsoever and is required Plaintiff to pay 75% of the cost of the travel.

34.     As a result, Plaintiff has suffered loss and damages.


**COUNT IV**

(Respondeat Superior)


35.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

36.     Jetsmarter and its agents, John Does 1 - 4 instructed or at least permitted Defendants Hollenbach to utilize its name in the carrying out of marketing and sales of

flight services.

37.     When marketing, advertising and selling the services which is the subject matter hereof, Defendant was acting within the scope of his agency or employment.

38.     Jetsmarter and its agents, John Does 1 -4 had a duty to properly train and supervise Hollenbach which Jetsmarter and John Does 1-4 failed to carry out.

39.     The actions taken by Defendants Jetsmarter and Hollenbach in the marketing and sale of the property to Plaintiff caused Plaintiff damages.

40.     As a result, Plaintiff has suffered damages.


## FIFTH COUNT
(Fraud)


41.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

42.     In communications from Jetsmarter and Hollenbach to Plaintiff prior to upgrade to a Sophisticated Membership in June, 2018, Defendants made material representations about, inter alia, the cost and benefits of travel through Jetsmarter's program.

43.     The representations made by Defendants were false.   Within just two months of the upgrade Defendants, through Defendant Hollenbach, unilaterally altered the program by requiring Plaintiff to pay separately 75% of the cost of travel, rmeoving flights and abating benefits.

44.     Defendants knew or should have known that these representations to Plaintiff were false and misleading and that Plaintiffs would rely upon the same.

45.     Plaintiff reasonably relied upon Defendants' statements and enrolled with Jetsmarter paying the amounts quoted to him.

46.     As a result, Plaintiff has suffered damages.


## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Leonardo Galvez demands judgment against defendants, jointly

and severally, as follows:

(1)     Awarding judgment and damages sustained by Plaintiff Leonardo Galvez of no
less than $3,442,789.80, together with pre-judgment interest;
(2)     Awarding punitive damages;
(3)     Awarding Plaintiff Leonardo Galvez his costs and disbursements and
reasonable allowances for the fees of plaintiff's counsel and experts, and reimbursement
of expenses;
(4) Awarding Plaintiff Leonardo Galvez counsel fees prejudgment interest; and
(5) Awarding such other and further relief the Court deems just and equitable.


## JURY TRIAL DEMAND

Plaintiffs requests a jury trial for any and all Counts for which a trial by jury is permitted
by law.


Respectfully submitted this 6th day of November, 2018


THE LAW OFFICES OF BRUCE E. BALDINGER, LLC
Attorney for Plaintiff Leonardo Galvez
365 South Street
Morristown, NJ 07960
908.218.0060


By: /s/ Bruce E. Baldinger
_____