## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LEONARDO GALVEZ,<br><br>               Plaintiff,<br><br>v.<br><br>JETSMARTER, BRENT HOLLENBACH,<br>and JOHN DOES 1 through 5,<br><br>               Defendants. | Civil Action No. 1:18-cv-10311-VSB<br><br>**<u>Oral Argument Requested</u>** |

---

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS AND COMPEL ARBITRATION

---

### GORDON REES SCULLY MANSUKHANI LLP
Ronald A. Giller
Daniel J. DiMuro
18 Columbia Turnpike, Suite 220
Florham Park, NJ 07932
Tel: (973) 549-2532
Fax: (973) 377-1911
E-mail: rgiller@grsm.com
E-mail: ddimuro@grsm.com
*Attorneys for Defendants*
*JetSmarter, Inc. and Brent Hollenbach*

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ..................................................................................... ii

PRELIMINARY STATEMENT ............................................................................. 1

STATEMENT OF FACTS ..................................................................................... 3

    I.     Plaintiff's Allegations ........................................................................ 3

    II.    The Membership Agreement ............................................................. 4

    III.   Class Action Arbitration .................................................................... 8

LEGAL ARGUMENT ............................................................................................ 9

    I.     The Membership Agreement Compels Arbitration of This Dispute ................... 9

          A.    Plaintiff Accepted a Written Agreement to Arbitrate this Dispute ........... 10

          B.    An Arbitrable Issue Exists ......................................................... 14

    II.    Alternatively, a Stay of This Action is Appropriate Pending
          Resolution of the Certified Class Action Arbitration ......................... 16

CONCLUSION ..................................................................................................... 19

# TABLE OF AUTHORITIES

**CASES**                                                                                               **PAGE**

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011)................................................................................................. 9

*Bekele v. Lyft, Inc.*,
    199 F. Supp. 3d 284 (D. Mass. 2016) ............................................................. 11

*Broker Genuis, Inc. v. Volpone*,
    313 F. Supp. 3d 484 (S.D.N.Y. 2018)...................................................... 12-13

*Chestnut v. Whitehaven Income Fund, I, LLC*,
    No. 12-cv-8854 (PAC), 2014 WL 5388562 (S.D.N.Y. Oct. 23, 2014) ........................... 10

*Citrus Mktg. Bd. v. J Lauritzen A/S*,
    943 F.2d 220 (2d Cir. 1991).............................................................................. 17

*Collins & Aikman Prods. Co. v. Building Sys., Inc.*,
    58 F.3d 16 (2d Cir. 1995)................................................................................. 10

*E. Reg'l Med. Ctr., Inc. v. Fry*,
    No. 5:18-cv-00396-(BKS-TWD), 2018 WL 5266873 (N.D.N.Y. Oct. 23, 2018)............ 12

*Fla. Power Corp. v. City of Casselberry*,
    793 So. 2d 1174 (Fla. 5th DCA 2001) ................................................... 15-16 n.2

*Fteja v. Facebook, Inc.*,
    841 F. Supp. 2d 829 (S.D.N.Y. 2012)............................................................. 11

*Germosen v. ABM Indus. Corp.*,
    No. 13-cv-1978 (ER), 2014 WL 4211347 (S.D.N.Y. Aug. 26, 2014)........................ 9 n.1

*Holick v. Cellular Sales of N.Y., LLC*,
    802 F.3d 391 (2d Cir. 2015)............................................................................. 10

*Kutluca et al. v. PQ N.Y. Inc. et al.*,
    266 F. Supp. 3d 691 (S.D.N.Y. 2017)............................................................. 13

*Landis v. North America Co.*,
    299 U.S. 248, 81 L. Ed. 153 (1936)................................................................. 17

*Maisel v. McDougal Littell*,
    2006 WL 1409019 (S.D.N.Y. May 22, 2006) ................................................. 14

## TABLE OF AUTHORITIES (Continued)

*Malkin v. Funding Trust II*,
    No. 15-CV-62092-BLOOM/Valle, 2016 WL 8729959 (S.D. Fla. Feb. 1, 2016)............. 15

*McCracken v. Verisma Sys.*,
    No. 6:14-cv-06248(MAT), 2018 WL 4233703 (W.D.N.Y. Sept. 6, 2018) ...................... 17

*Meyer v. Uber Technologies*,
    868 F.3d 66 (2d Cir. 2017).......................................................................................... 11

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983)......................................................................................................... 9

*O'Callaghan v. Uber Corp. of Cal.*,
    2018 WL 3302179 (S.D.N.Y. July 3, 2018) ............................................................ 11-12

*People v. Direct Revenue, LLC*,
    862 N.Y.S. 2d 816 (Sup. Ct. 2008)............................................................................ 12

*Rent-A-Center, W., Inc. v. Jackson*,
    561 U.S. 63 (2010)...................................................................................................... 14

*Salameno v. Gogo Inc.*,
    No. 16-CV-0487, 2016 WL 4005783 (E.D.N.Y. July 7, 2016)...................................... 12

*Segal v. Amazon.com, Inc.*,
    763 F. Supp. 2d 1367 (S.D. Fla. 2011) ...................................................................... 13

*Siedle v. Nat'l Assoc. of Sec. Dealers, Inc.*,
    248 F. Supp. 2d 1140 (M.D. Fla. 2002)..................................................................... 13

*U.S. Nutraceuticals, LLC v. Cyanotech Corp.*,
    769 F.3d 1308 (11th Cir. 2014) ................................................................................. 15

*Valle v. ATM Nat'l, LLC*,
    No. 14-cv-7993 (KBF), 2015 WL 413449 (S.D.N.Y. Jan. 30, 2015).............................. 13

*Virk v. Maple-Gate Anesthesiologists, P.C.*,
    657 F. App'x 19 (2d Cir. 2016) ................................................................................. 10

## STATUTES

9 U.S.C.A. §§ 1-16........................................................................................................... 9

9 U.S.C.A. § 2 .................................................................................................................. 9

GBL § 349 .................................................................................................................... 1, 7

## PRELIMINARY STATEMENT

Defendants JetSmarter, Inc. and Brent Hollenbach (collectively, "JetSmarter") respectfully submit this brief in support of their motion to compel arbitration and dismiss this action; or, in the alternative, stay all further proceedings pending resolution of the related certified class action arbitration.

This action stems from an agreement that Plaintiff Leonardo Galvez ("Plaintiff") entered into with JetSmarter in which Plaintiff paid JetSmarter certain membership fees and other fees and, in exchange, JetSmarter agreed to provide Plaintiff with, among other things, access to travel-related services (the "Membership Agreement"). The Membership Agreement also contains a dispute resolution clause pursuant to which the parties agreed that any claim or dispute related to the Membership Agreement or the relationship or duties of the parties, including without limitation validity of the dispute resolution provision, would be resolved exclusively by binding arbitration. Plaintiff assented to arbitration by "clicking" an electronic toggle that signaled his acceptance to the terms and conditions in the Membership Agreement.

Plaintiff alleges that during the course of his membership, JetSmarter unilaterally changed the terms of the program to his detriment. As a result, and in complete contravention of the clear and enforceable mandatory arbitration provision contained in the Membership Agreement, Plaintiff brought this action against JetSmarter alleging breach of contract, violation of good faith and fair dealing, violation of GBL § 349, Unfair Trade Practices, respondeat superior, and common law fraud.

As a threshold matter, it is submitted that the Court should enforce the clear and

1

unambiguous arbitration provision contained in the Membership Agreement which requires that "[a]ny claim or dispute between the parties and/or against any

. . . employee . . . whether related to this Agreement, any of the Terms and Conditions, or the relationship or duties contemplated herein, including the validity of this clause, shall be resolved by binding arbitration . . . [and] [t]he place of arbitration shall be Broward County, Florida." *See* Membership Agreement at § 18.  This provision plainly requires all disputes to be decided by a neutral decision-maker in arbitration, and not by a jury in the Southern District of New York.  Plaintiff chose to entirely ignore this binding and enforceable provision requiring arbitration.  The Federal Arbitration Act and binding Supreme Court case law mandates that written agreements to arbitrate disputes must be enforced according to their terms.  Accordingly, the Court should dismiss the current action, and compel binding arbitration as the parties contemplated and agreed in accordance with the Membership Agreement's arbitration provision.

Given that there are multiple proceedings commenced by other members alleging the same or similar claims as Plaintiff that are currently pending in other arbitrations, this action should be coordinated with the other arbitration proceedings to achieve judicial economy, avoidance of inconsistent results, and conservation of the parties' resources.

In the rare event the Court is not inclined to compel arbitration, it is submitted that the Court should stay this action pending resolution of the related class action arbitration. On or about September 5, 2018, other plaintiffs lodged a Demand for Class Arbitration against JetSmarter with the American Arbitration Association in Fort Lauderdale, Florida (the "Class Arbitration").  Plaintiff would be included in this certified class and have the

2

ability to participate or opt-out of the class.  JetSmarter and class counsel agreed to arbitrate the class before the American Arbitration Association in Broward County, Florida and the arbitrator has been appointed.  Moreover, JetSmarter and class counsel have engaged in motion practice, limited discovery, and scheduled mediation in an effort to resolve the terms of the class action settlement which is expected to take place in December 2018.  As a result of this class action filing, it is respectfully submitted that judicial economy mandates a stay of the instant action pending resolution of the class action.  There is absolutely no reason to waste judicial resources and the resources of the respective parties in the event that Plaintiff is amenable to the terms of the class action settlement.  Thus, if arbitration is not compelled, this Court should stay all proceedings pending resolution of the class action.

Accordingly, based upon the foregoing, it is respectfully requested that the Court grant this motion and issue the relief requested above.

## STATEMENT OF FACTS

### I.    Plaintiff's Allegations

Plaintiff alleges that in or about April 2015, he was contacted by JetSmarter's representative, Brent Hollenbach, regarding certain private jet services and a membership with JetSmarter.  *See* Declaration of Ronald A. Giller ("Giller Decl."), Ex. 1 (Complaint), at ¶ 7.  On or about April 19, 2015, Plaintiff alleges that he purchased his membership with JetSmarter and received the private jet benefits that he expected as well as other additional benefits.  *See id.* at ¶ 8.

On or about June 1, 2018, Plaintiff alleges that he upgraded his membership with

3

JetSmarter to a Sophisticated Membership and provided JetSmarter with payment in the amount of $97,500 for a three-year membership.  *See id.* at ¶¶ 11-12.

Thereafter, as alleged by Plaintiff, three weeks after receipt of the payment, JetSmarter purportedly substantially reduced the services provided to Plaintiff.  *See id.* at ¶ 13.  Plaintiff further alleges that JetSmarter purportedly required him to pay 75% of the price of the flights instead of the "free flying" that was advertised.  *See id.* at ¶ 15.

Based upon the purported change in services, Plaintiff initiated this breach of contract action on November 6, 2018.  *See* Giller Decl. at Ex. 1.

## II.     **The Membership Agreement**

When Plaintiff originally signed up for JetSmarter's program in or about April 2015, he entered into a Membership Agreement with JetSmarter.  *See* Declaration of Mikhail Kirsanov ("Kirsanov Decl.") at ¶ 3.  At that time, he acknowledged and accepted the terms and conditions of the Membership Agreement including the provision that such agreement may be amended or modified.  *See id.*

In this regard, the Membership Invoice included the following language directly above the itemized membership fees:

> THE ABOVE PERSON OR ENTITY IS HEREBY REFERRED TO AS "THE MEMBER".
>
> BY REMITTING THE AMOUNT DUE UNDER THIS INVOICE AND ACCEPTING THE TERMS AND CONDITIONS OF THE MEMBERSHIP AGREEMENT, MEMBER WILL GAIN ACCESS TO JETSMARTER'S SERVICE

*Id.* at Ex. 1 (emphasis added).

Below the itemized charges, the Membership Invoice contained a large "toggle

button" to the left of the phrase, "I ACCEPT TERMS AND CONDITIONS OF THE

MEMBERSHIP AGREEMENT":



*See id.*  Plaintiff signaled his acceptance of the Membership Agreement by clicking on

the toggle button, moving the button from its default position to the position shown

above.  *Id.* at ¶¶ 4-6.  Plaintiff had to click the toggle button in order to access the screen

for entering his payment information.  *Id.*  In other words, Plaintiff could pay his invoice

only after clicking on the toggle button and signaling his acceptance of JetSmarter's

Membership Agreement.  *Id.*

Before toggling the button, Plaintiff could have easily accessed the full

Membership Agreement by clicking the hyperlink next to the toggle button or the second

hyperlink below the toggle button.  The language below the toggle button clearly warned

Plaintiff that it was his "sole responsibility to review and abide by all of the terms and

conditions of the Membership Agreement and all applicable service terms and conditions,

as amended from time to time."  *Id.* at Ex. 1.  If he clicked the hyperlinks, Plaintiff would

have been directed to a webpage displaying the Membership Agreement.  *Id.* at ¶ 7.  The

Membership Agreement's opening paragraph plainly stated that members were agreeing

"to the following terms and conditions . . . relating to the services provided in relation to Member's subscription to JetSmarter's membership program."  *Id.* at Ex. 2.

This membership agreement contained a dispute resolution section requiring all disputes be resolved by binding arbitration before the American Arbitration Association. *Id.*

Plaintiff's membership was renewed over the years; however, for purposes of this litigation, Plaintiff takes issue with his upgraded, Sophisticated Membership.  In this regard, in or about May 2018, Plaintiff upgraded his membership with JetSmarter to a three-year Sophisticated Membership and acknowledged and accepted the terms and conditions of the Membership Agreement including the provision that such agreement may be amended or modified from time to time.  *See id.* at ¶ 8-9.

Again, like the original transaction, the Membership Invoice contained a check box immediately adjacent to the phrase: "I ACCEPT TERMS AND CONDITIONS OF THE MEMBERSHIP AGREEMENT":

 I ACCEPT TERMS AND CONDITIONS OF THE MEMBERSHIP AGREEMENT

The Membership Fee and Initiation Fee is an access fee for use of the Service, is not a payment for air transportation, and is non-refundable, even if the Member fails to utilize the JetSmarter services. The Membership Fee is not amortized over time and not based on Member's ability to purchase or use the Service. The Membership Agreement may be amended or modified from time to time and available for review at https://jetsmarter.com/legal/membership-agreement/. It is the Member's sole responsibility to review and abide by all of the terms and conditions of the Membership Agreement and all applicable service terms and conditions, as amended from time to time.

*See id.* at Ex. 3.  The check box on Plaintiff's Membership Invoice was clicked and checked signaling Plaintiff's assent to the terms of the Membership Agreement.  *Id.*  The check box had to be clicked in order for Plaintiff to enter his payment information, which

he did.  *Id.* at ¶ 9.

Again, if Plaintiff would have clicked the hyperlink "TERMS AND CONDITIONS OF THE MEMBERSHIP" or even the hyperlink located below the check box, he would have been taken to a slightly updated Membership Agreement.  *Id.* at ¶ 10. This updated version, however, did not change the general terms of the arbitration provision which required all disputes to be resolved by way of binding arbitration before the American Arbitration Association:

> Any claim or dispute between the parties and/or against any agent, employee, successor, or assign of the other, whether related to this Agreement, any of the Terms and Conditions, or the relationship or rights or obligations contemplated herein, including the validity of this clause, shall be resolved exclusively by binding arbitration by the American Arbitration Association by a sole arbitrator under the Commercial Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes then in effect, which are deemed to be incorporated herein by reference[.]

*Id.* at Ex. 4, § 18.

The above-referenced unambiguous arbitration provision is broad and encompasses any claim or dispute between the parties related to their relationship, obligations, or the agreement.  *See id.* at Ex. 4.  Upon accepting the terms of the updated Membership Agreement, Plaintiff continued to use JetSmarter's services in 2018.  *Id.* at ¶ 11.

As a result, Plaintiff's claims relating to the purported misrepresentations and inaccuracy of the services provided and his causes of action for breach of contract, breach of the covenant of good faith and fair dealing, violation of GBL § 349, Unfair Trade

Practices, common law fraud, and respondeat superior all fall within the ambit of the mandatory arbitration provision.  Moreover, there are multiple proceedings commenced by other members alleging the same or similar claims as Plaintiff that are currently pending in other arbitrations.  *See* Declaration of Jenna Gushue ("Gushue Decl.") at ¶ 2. As such, this case should be dismissed and ordered to arbitration so that it can be coordinated with the other arbitration proceedings.  In the alternative, if the Court is not inclined to enforce the clear and unambiguous arbitration provision, it is submitted that the Court should stay this action pending resolution of the class action arbitration.

## III.    <u>Class Action Arbitration</u>

On or about September 5, 2018, other plaintiffs lodged a Demand for Class Arbitration against JetSmarter with the American Arbitration Association in Fort Lauderdale, Florida ("Class Arbitration").  *Id.* at ¶ 3.  Plaintiff would be included in this certified class and have the ability to participate or opt-out of the class.  *Id.* at ¶ 4. JetSmarter and class counsel agreed to arbitrate the class before the American Arbitration Association in Broward County, Florida and the arbitrator was appointed.  *Id.* at ¶ 5. JetSmarter and class counsel have engaged in motion practice and limited discovery and scheduled mediation in an effort to resolve the terms of the class action settlement which is expected to take place in December 2018.  *Id.* at ¶ 6.  As a result of this class action filing, it is submitted that the prudent action is to stay the instant case pending resolution of the class action arbitration.

## LEGAL ARGUMENT

### I.    The Membership Agreement Compels Arbitration of This Dispute

The binding arbitration provision contained in the Membership Agreement is unambiguous and enforceable. As such, this action should be dismissed and binding arbitration compelled.[1]

The Federal Arbitration Act ("FAA"), 9 U.S.C.A. §§ 1-16, expresses a national policy favoring arbitration and requires courts to "place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 346 (2011) (internal citations omitted). Indeed, the FAA mandates that written agreements to arbitrate disputes "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C.A. § 2.

Moreover, due to the strong public policy in favor of arbitration, the United States Supreme Court has emphasized that questions of arbitrability "must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Thus, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id.* at 24-25; *AT&T Mobility LLC*, 563 U.S. at 341 (explaining that the FAA pre-empts any contrary state law regarding the arbitrability of a dispute).

---

[1] While the FAA requires a stay of any action subject to a valid arbitration agreement, this Court has the discretion to dismiss this action if all the issues raised are arbitrable. *See Germosen v. ABM Indus. Corp.*, No. 13-cv-1978 (ER), 2014 WL 4211347, at *26 (S.D.N.Y. Aug. 26, 2014).

The Second Circuit has explained the presumption of enforceability of an arbitration provision:

> We have stated that a court should decide at the outset whether the arbitration agreement [is] broad or narrow. If broad, then there is a presumption that the claims are arbitrable. The clause in this case, submitting to arbitration [a]ny claim or controversy arising out of or relating to th[e] agreement, is the paradigm of a broad clause.

*Chestnut v. Whitehaven Income Fund, I, LLC*, No. 12-cv-8854 (PAC), 2014 WL 5388562, at *3 (S.D.N.Y. Oct. 23, 2014) (quoting *Collins & Aikman Prods. Co. v. Building Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995)) (internal quotations omitted). Likewise, here, the arbitration provision is similarly broad and, as such, the clause creates a presumption in favor of arbitrating Plaintiff's claims.

Under the FAA, there are two elements for courts to consider in ruling on a motion to compel arbitration of a given dispute: "(1) whether the parties agreed to arbitrate, and, if so, (2) whether the scope of that agreement encompasses the claims at issue." *Virk v. Maple-Gate Anesthesiologists, P.C.*, 657 F. App'x 19, 21 (2d Cir. 2016) (quoting *Holick v. Cellular Sales of N.Y., LLC*, 802 F.3d 391, 394 (2d Cir. 2015)). Here, both prongs are easily met.

### A.    Plaintiff Accepted a Written Agreement to Arbitrate this Dispute

First, there most certainly exists a valid written agreement to arbitrate – the Membership Agreement containing the arbitration provision – which Plaintiff acknowledged and accepted on numerous occasions. *See* Kirsanov Decl. at ¶¶ 3-11. Plaintiff expressed his agreement to arbitrate by clicking to accept the terms of

10

JetSmarter's Membership Agreement.  This is known as a "clickwrap"' agreement, which requires users to click a box or toggle a button to affirmatively accept written terms and conditions.  *See, e.g.*, *Meyer v. Uber Technologies*, 868 F.3d 66, 75 (2d Cir. 2017).  A clickwrap agreement is distinguishable from a "browsewrap" agreement, which only passively posts a hyperlink to terms and conditions on a webpage (often the bottom), but does not require the reader to click, toggle, or otherwise take action to express assent to those terms.  *Id.*

Courts across the country regularly enforce clickwrap agreements – such as Plaintiff's agreement with JetSmarter – because they require affirmative assent to the terms of the relationship.  *See Meyer*, 868 F.3d at 75 ("Courts around the country have recognized that [an] electronic "click" can suffice to signify the acceptance of a contract[.]") (citation omitted).  In *Meyer*, the Second Circuit enforced an arbitration agreement located within the terms of service for Uber ride-sharing software.  *See id; see also Bekele v. Lyft, Inc.*, 199 F. Supp. 3d 284, 295 (D. Mass. 2016) (enforcing arbitration agreement against drivers of Lyft service, who clicked on "I agree" box near terms of service); *Fteja v. Facebook, Inc*., 841 F. Supp. 2d 829, 837 (S.D.N.Y. 2012) ("[N]umerous courts, including a number of courts in this Circuit, have enforced forum selection clauses in clickwrap agreements.").  Put simply, "Courts routinely uphold clickwrap agreements for the principal reason that the user has affirmatively assented to the terms of agreement by clicking 'I agree.'"  *Meyer*, 868 F.3d at 75.

In this case, the enforceability of the clickwrap agreement is governed by state law.  *See O'Callaghan v. Uber Corp. of Cal.*, 2018 WL 3302179, at *13 (S.D.N.Y. July

3, 2018).  The JetSmarter Membership Agreement contains a Florida choice of law

provision.  *See* Kirsanov Decl. at Ex. 4.  However, as set forth below, both Florida and

New York law favor the enforcement of clickwrap agreements; thus, there is no conflict

that would typically necessitate a choice of law analysis.  *See E. Reg'l Med. Ctr., Inc. v.

Fry*, No. 5:18-cv-00396-(BKS-TWD), 2018 WL 5266873, at *6-7 (N.D.N.Y. Oct. 23,

2018).

   Under New York law, clickwrap agreements "are enforced so long as the

consumer is given a sufficient opportunity to read the [Agreement], and assents thereto

after being provided with an unambiguous method of accepting or declining the offer."

*People v. Direct Revenue, LLC*, 862 N.Y.S. 2d 816 (Sup. Ct. 2008).  Moreover, as set

forth in *Salameno v. Gogo Inc.*, "[a]s a contract, an arbitration agreement requires an

offer and a knowing acceptance. 'Mutual manifestation of assent' is the 'touchstone' of a

binding contract.  A 'transaction,' even if created online, 'in order to be a contract,

requires a manifestation of agreement between the parties' as to its terms."  No. 16-CV-

0487, 2016 WL 4005783, at *10-11 (E.D.N.Y. July 7, 2016) (citation omitted).

   In *Salameno*, the "plaintiffs were presented with a webpage that required them to

click a button near the statement 'By clicking this button, you agree to Gogo's privacy &

cookie policy and terms of use.'"  *See id.* at *11.  Likewise, in this case, as set forth

above, Plaintiff's Membership Invoice contained a check box immediately adjacent to the

phrase: "I ACCEPT TERMS AND CONDITIONS OF THE MEMBERSHIP

AGREEMENT," which was ultimately checked, along with two hyperlinks giving

Plaintiff a sufficient opportunity to read the agreement.  *See Broker Genuis, Inc. v.*

12

*Volpone*, 313 F. Supp. 3d 484, 498 (S.D.N.Y. 2018) (quoting *Kutluca et al. v. PQ N.Y. Inc. et al.*, 266 F. Supp. 3d 691, 702 (S.D.N.Y. 2017) (discussing the enforceability of a clickwrap agreement and explaining that "[w]hether or not [the users] remember [assenting to the clickwrap agreement], the evidence demonstrates that [the users] could not have proceeded to use the [software] . . . unless they accepted the [agreement], which renders [their] failing memories irrelevant.")); *Valle v. ATM Nat'l, LLC*, No. 14-cv-7993 (KBF), 2015 WL 413449, at *7 (S.D.N.Y. Jan. 30, 2015) ("Courts have held that customers accept revised terms of their accounts by continuing to use their accounts after receiving the revised terms.") (citations omitted).

Similarly, Florida federal courts agree that Florida would enforce clickwrap agreements.  *See Segal v. Amazon.com, Inc.*, 763 F. Supp. 2d 1367, 1369-70 (S.D. Fla. 2011) (enforcing forum selection clause in clickwrap agreement in agreement to sell products on Amazon.com); *Siedle v. Nat'l Assoc. of Sec. Dealers, Inc.*, 248 F. Supp. 2d 1140, 1143 (M.D. Fla. 2002) (agreeing with multiple decisions from other courts enforcing clickwrap agreements).

In sum, Florida courts have specifically and recently enforced clickwrap agreements requiring parties to litigate their dispute in a particular forum.  Likewise, New York law recognizes that a party may assent to contract terms by deeds as well as words, which should include the volitional act of clicking on a button next to the words, "I ACCEPT TERMS AND CONDITIONS OF THE MEMBERSHIP AGREEMENT," especially when the full terms of that agreement are only one click away.  Moreover, as explained in *Valle*, the mere continued use of the subject services – it is undisputed that

13

Plaintiff utilized JetSmarter's services – may constitute assent as well.  Because JetSmarter's clickwrap agreement is enforceable under both states' laws, JetSmarter satisfies the first prong and this Court should hold Plaintiff to its agreement and require him to arbitrate his dispute with the American Arbitration Association.

### B.    An Arbitrable Issue Exists

The second prong is also satisfied.  Whether an arbitrable issue exists is clearly a question for the arbitrator.  In this regard, courts "have recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010).

The court's decision in *Maisel v. McDougal Littell* provides some guidance. *See Maisel v. McDougal Littell*, 2006 WL 1409019, at *6 (S.D.N.Y. May 22, 2006).  In that action, the court explained that the arbitration clause in question provided for arbitration before the AAA, pursuant to its Commercial Arbitration Rules. *See id.* The court went on to reference the specific AAA rules which provide that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." *Id.* (internal citation omitted). Moreover, the court in *Maisel* emphasized that the Second Circuit has "held that when . . . parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *Id.* (internal citation omitted).

This matter is closely akin to *Maisel* because the instant agreement requires issues

14

of the validity of the arbitration clause and arbitrability to be decided by the arbitrator and

unequivocally incorporates the AAA Arbitration Rules:

> Any claim or dispute between the parties and/or against any agent, employee, successor, or assign of the other, whether related to this Agreement, any of the Terms and Conditions, or the relationship or rights or obligations contemplated herein, including the validity of this clause, shall be resolved exclusively by **binding arbitration by the American Arbitration Association by a sole arbitrator under the Commercial Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes then in effect, which are deemed to be incorporated herein by reference[.]**

*See* Kirsanov Decl. at Ex. 4, § 18 (emphasis added); *see also Malkin v. Funding Trust II*,

No. 15-CV-62092-BLOOM/Valle, 2016 WL 8729959, at *23 (S.D. Fla. Feb. 1, 2016)

(quoting *U.S. Nutraceuticals, LLC v. Cyanotech Corp.*, 769 F.3d 1308, 1311 (11th Cir.

2014)) ("The Eleventh Circuit has stated that 'when parties incorporate the rules of the

[American Arbitration] Association into their contract, they clearly and unmistakably

agree[] that the arbitrator should decide whether the arbitration clause [applies].'")

(internal quotations omitted).  As such, based upon the clear language contained in the

instant arbitration provision, it is submitted that this element is also satisfied and this

Court should compel arbitration.

Based upon the foregoing, the FAA controls and requires that the Court dismiss

this action and compel arbitration.[2]  Because there are multiple proceedings commenced

---

[2] As set forth above, the Membership Agreement also contains a choice-of-law provision requiring the application of Florida law.  *See* Kirsanov Decl. at Ex. 4, § 17.  To the extent the FAA somehow does not preempt the Florida Arbitration Code ("FAC"), application of the FAC would cause the same result.  *See Fla. Power Corp. v. City of Casselberry*,

by other members alleging the same or similar claims as Plaintiff that are currently

pending in other arbitrations, it is respectfully requested that the Court grant this motion

and compel arbitration so that this action can be coordinated with the other arbitration

proceedings to achieve judicial economy, avoidance of inconsistent results, and

conservation of the parties' resources.[3]

## II.   Alternatively, a Stay of This Action is Appropriate Pending Resolution of the Certified Class Action Arbitration

In the alternative, if the Court is not inclined to compel arbitration, it should issue

a stay of these proceedings pending resolution of the class action arbitration.  It is well-

settled that a procedural stay is appropriate when judicial economy and avoidance of

confusion and possible inconsistent results are involved.  To require the parties to

participate in extensive discovery at this time is not prudent given the pending class

action arbitration.  Instead, a more practical and efficient approach is to await the

resolution of the class action arbitration and then determine whether this litigation is in

fact required or needed.

It is well-settled that a United States District Court has broad power to stay

proceedings:

---

793 So. 2d 1174, 1178-79 (Fla. 5th DCA 2001) (applying same factors as well as waiver factor).  It is undisputed that JetSmarter has in no way waived its right to seek arbitration as it is seeking to compel arbitration of this dispute at its first possible opportunity and has yet to participate substantively in this litigation.

[3] It should also be noted that counsel for plaintiff, Bruce Baldinger, Esq., previously filed an action against JetSmarter related to the membership agreements in New Jersey which was removed to the District Court of New Jersey and another motion to compel

16

> This follows from the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants.

*See Citrus Mktg. Bd. v. J Lauritzen A/S*, 943 F.2d 220, 225 (2d Cir. 1991) (quoting

*Landis v. North America Co.*, 299 U.S. 248, 254, 81 L. Ed. 153 (1936)) (quotations

omitted). "It is within the sound discretion of a district court to enter a stay pending the

outcome of independent proceedings that are likely to affect a case on its calendar."

*McCracken v. Verisma Sys.*, No. 6:14-cv-06248(MAT), 2018 WL 4233703, at *5

(W.D.N.Y. Sept. 6, 2018).

Courts in the Second Circuit typically apply the following five factor test when

deciding a motion to stay a civil action:

> (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the court; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.

*Id.* at *5-6 (quotation and citation omitted).

These factors clearly weigh in favor of a stay. First, Plaintiff would suffer

absolutely no prejudice in the granting of a stay pending resolution of the class action. If

he is not pleased with the resolution and ultimately opts out of the class, he could most

certainly expeditiously pursue his claims. Second, should a stay not be issued, JetSmarter

would needlessly incur additional fees and expenses if Plaintiff ultimately accepts the

class award. Thus, the first and second factors plainly support the issuance of a stay.

---

arbitration is expected to be filed in that action shortly. *See Davimos v. JetSmarter, Inc.*,

17

Third, the interests of the court and the public interest weigh in favor of a stay. Indeed, "[c]onsiderations of judicial economy are frequently viewed as relevant to the public interest, and, as noted, they weigh against the investment of court resources that may prove to have been unnecessary." *Id.* at *12. Here, judicial economy warrants a stay pending resolution of the class action arbitration. Should the settlement be acceptable to Plaintiff, there would be no need to burden the judiciary with this action or waste the time and money of the parties involved in this action. Moreover, in the event there is no settlement and the arbitrator decides the claims on the merits, such decisions, while not having a preclusive effect if Plaintiff decides to opt-out, may certainly result in inconsistencies. Thus, a settlement or determination by the arbitrator of some of the common issues may indeed simplify the issues that would be litigated in this Court.

The final factor – the interests of persons not parties to the civil litigation – is not impacted here and those non-parties will suffer no adverse impact with the granting of a stay.

Based upon the foregoing, these factors overwhelmingly weigh in favor of the entry of a stay of this action pending resolution of the class action. Indeed, for the sake of judicial economy, avoidance of inconsistent results, conservation of the parties' resources, and lack of any prejudice to Plaintiff whatsoever, it is respectfully requested that the Court grant this motion and stay these proceedings pending resolution of the class action arbitration as to Plaintiff.

---

*et al.*, Civ. No. 3:18-cv-15144.

## <u>CONCLUSION</u>

The clear and unambiguous arbitration provision contained in the Membership Agreement should be enforced and this Court should dismiss the pending action and compel arbitration of the dispute between the parties so that this action can be coordinated with the other proceedings currently pending in arbitration.  However, if the Court is not inclined to compel arbitration, in light of judicial economy, this entire action should be stayed pending resolution of the class action arbitration.

**GORDON REES SCULLY MANSUKHANI LLP**
*Attorneys for Defendants*

By:  */s/ Ronald A. Giller*
         Ronald A. Giller, Esq.
         Daniel J. DiMuro, Esq.

Dated: December 6, 2018