UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------X
                               :

LEONARDO GALVEZ,                :
                               :

                    Plaintiff,    :

                               :

         - against -         :

                               :

JETSMARTER, INC, BRENT      :
HOLLENBACH, and JOHN DOES 1–4,  :
                               :

                 Defendants.  :
                               :
--------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __9/30/2019__

18-CV-10311 (VSB)

**OPINION & ORDER**

Appearances:

Bruce E. Baldinger
The Law Offices of Bruce E. Baldinger, LLC
Morristown, New Jersey
*Counsel for Plaintiff*

Ronald Andrew Giller (Florham Park, New Jersey)
Catherine Bentivegna (New York, New York)
Daniel Jason Dimuro (Florham Park, New Jersey)
Gordon & Rees LLP
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

      Plaintiff Leonardo Galvez brings this breach of contract and fraud action against

Defendants JetSmarter, Inc. ("JetSmarter"), JetSmarter Senior Membership Executive Brent

Hollenbach, and John Does 1–4, officers and managers of JetSmarter, arising out of an

agreement pursuant to which JetSmarter agreed to provide Plaintiff with certain travel-related

services. Before me is Defendants' motion to dismiss Plaintiff's complaint and to compel

arbitration. Because I find that the parties entered into a valid agreement to arbitrate and because

they delegated the question of the scope of the agreement's arbitration provision to the arbitrator,

Defendants' motion to compel arbitration is granted.  However, Defendants' motion to dismiss the action is denied and the proceeding will instead be stayed pending arbitration.  Accordingly, Defendants' motion is GRANTED IN PART and DENIED IN PART.

## I.  <u>Background</u>[1]

Defendant JetSmarter is a corporation that provides air transportation to customers seeking an alternative to commercial carriers and private jet ownership.  (Compl. ¶ 4.)  Defendant Brent Hollenbach is a "Senior Membership Executive" at JetSmarter who, in April 2015, contacted Plaintiff Leonardo Galvez to share with him information about JetSmarter's membership program.  (*Id.* ¶¶ 5, 7.)  After speaking with Hollenbach, Plaintiff signed up for JetSmarter's services online by entering into a Membership Agreement with JetSmarter and paying the $8,499 membership fee.  (*Id.* ¶ 8; Kirsanov Decl. ¶¶ 2, 3; *id.* Ex. 1.)  In order to pay his membership invoice, Galvez was required to "click on a 'toggle button' next to the phrase: 'I ACCEPT TERMS AND CONDITIONS OF THE MEMBERSHIP AGREEMENT.'"  (Kirsanov Decl. ¶ 4.)  This text contained a hyperlink to the full JetSmarter Membership Agreement, (*id.* ¶ 5), which provided that "[a]ny claim or dispute between the Parties . . . shall be resolved by binding arbitration."  (*Id.* Ex. 2 ("2015 Agmt."), § 15.)

At first, Plaintiff was satisfied with JetSmarter's services, and he renewed his

---

[1] The following summary is drawn from the allegations set forth in Plaintiff's Complaint and Jury Demand. ("Compl." or "Complaint," Doc. 1.)  "On a motion to compel arbitration, the Court accepts as true the allegations in the complaint that relate to the underlying dispute between the parties."  *In re Document Techs. Litig.*, No. 17-cv-2405, 2017 WL 2840280, at *1 (S.D.N.Y. Apr. 27, 2017) (citing *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 113 (2d Cir. 2012)).  My reference to these allegations should not be construed as a finding as to their veracity, and I make no such findings.  This Opinion & Order also draws from the Declaration of Mikhail Kirsanov in Support of Motion to Compel Arbitration ("Kirsanov Decl."), filed December 6, 2018, (Doc. 12), and the exhibits attached thereto; as well as the Declaration of Jenna F. Gushue in Support of Motion to Compel Arbitration ("Gushue Decl."), filed December 6, 2018, (Doc. 13).  Because motions to compel arbitration are evaluated under a standard "'similar to that applicable [to] a motion for summary judgment,'" courts are permitted to consider "materials outside the complaint" in evaluating such motions.  *Alfonso v. Maggies Paratransit Corp.*, 203 F. Supp. 3d 244, 247 (E.D.N.Y. 2016) (quoting *Bensadoun v. Jobe–Riat*, 316 F.3d 171, 175 (2d Cir. 2003)).

membership over the years.  (Compl. ¶¶ 8–9; Kirsanov Decl. ¶ 8.)  In May 2018, Plaintiff

upgraded his JetSmarter membership to a three-year "Sophisticated Membership," for the price

of $97,500.  (Compl. ¶ 11; Kirsanov Decl. ¶ 8; *id.* Ex. 3.)  In signing up for the Sophisticated

Membership, Plaintiff again acknowledged and accepted the terms and conditions of the

JetSmarter Membership Agreement.  (Kirsanov Decl. ¶ 9; *id.* Ex. 3.)  The version of the

JetSmarter Membership Agreement in effect on May 7, 2018—the date Plaintiff upgraded his

JetSmarter membership, (*see id.* Ex. 3)—provides, in pertinent part:

> Any claim or dispute between the parties and/or against any agent, employee,
> successor, or assign of the other, whether related to this Agreement, any of the
> Terms and Conditions, or the relationship or rights or obligations contemplated
> herein, including the validity of this clause, shall be resolved exclusively by binding
> arbitration by the American Arbitration Association by a sole arbitrator under the
> Commercial Arbitration Rules and the Supplementary Procedures for Consumer
> Related Disputes then in effect . . . .

(*Id.* Ex. 4 ("2018 Agmt."), § 18.)[2]  Within just three weeks of upgrading his membership to the

Sophisticated level, "Plaintiff noticed a substantial reduction in the services provided to him."

(Compl. ¶ 13.)  Among other issues, flight availability diminished, flights became more

expensive, and JetSmarter representatives became unresponsive.  (*Id.* ¶¶ 14–15.)  Plaintiff sought

a refund of his membership fee but JetSmarter refused to provide one.  (*Id.* ¶ 16.)

## II.   **Procedural History**

Plaintiff filed his Complaint on November 6, 2018, alleging claims for breach of contract,

violation of the duty of good faith and fair dealing, unfair trade practices pursuant to N.Y. Gen.

Bus. L. § 349, and fraud, against JetSmarter, Hollenbach, and John Does 1–4, officers and

---

[2] Because Plaintiff's claims in this lawsuit arise primarily from Defendants' alleged conduct following Plaintiff's May 2018 upgrade to JetSmarter's "Sophisticated Membership," (*see* Compl. ¶¶ 18–46), I consider the 2018 version of the JetSmarter Membership Agreement to be the operative agreement.  However, I note that the relevant provisions of the Membership Agreement appear to have been substantially unchanged between 2015 and 2018. (*Compare* 2015 Agmt. § 15 (dispute resolution provision), *with* 2018 Agmt. § 18 (same).)

managers of JetSmarter.  (*See generally* Compl.)  On December 6, 2018, Defendants filed the

instant motion to dismiss and to compel arbitration, (Doc. 9), along with a memorandum of law,

(Doc. 10), and supporting declarations, with exhibits, (Docs. 11–13).  Plaintiff filed his

opposition on January 9, 2019, (Doc. 22), and Defendants filed their reply, (Doc. 25), and a

supporting declaration with exhibits, (Doc. 23), on January 23, 2019.

Between February 25, 2019 and August 22, 2019, Defendants submitted ten notices of

supplemental authority, citing fourteen different state and federal court decisions granting

JetSmarter's motion to compel arbitration in similar lawsuits filed by other JetSmarter members.

(*See* Docs. 28–32, 34, 36–39.)  Two of those decisions, *Porcelli v. JetSmarter, Inc.*, No. 19 Civ.

2537 (PAE), 2019 WL 2371896 (S.D.N.Y. June 5, 2019), and *Firshein v. JetSmarter, Inc.*, No.

19-cv-3419 (VEC), ECF No. 20 (S.D.N.Y. July 25, 2019), were issued by courts in this district.

(*See* Docs. 36, 39.)[3]  Plaintiff responded to only one of Defendants' notices of supplemental

authority.  (*See* Doc. 35.)  Certain of Defendants' notices of supplemental authority also address

a class action arbitration against JetSmarter before the American Arbitration Association in Fort

Lauderdale, Florida (the "Class Arbitration").  (*See* Docs. 28, 30.)  The Class Arbitration was

certified on February 19, 2019, (*see* Doc. 28), and the arbitrator preliminarily approved a

settlement on March 19, 2019, (*see* Doc. 30).[4]

---

[3] In *Firshein*, Judge Caproni issued a short order granting JetSmarter's motion to compel arbitration, as JetSmarter's motion was unopposed.  *See* No. 19-cv-3419, ECF No. 20.  Although JetSmarter's motion to compel arbitration was also unopposed in *Porcelli*, Judge Engelmayer engaged in a thorough analysis of the parties' agreement to arbitrate.  *See generally Porcelli*, 2019 WL 2371896.

[4] According to Defendants, Plaintiff "would be included in this certified class and have the ability to participate or opt-out of the class."  (Gushue Decl. ¶ 4.)  Plaintiff represented in a June 3, 2019 letter to the Court that he had opted out of the Class Arbitration.  (*See* Doc. 35.)

### III.    <u>Legal Standard</u>

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, requires courts to compel arbitration in accordance with the terms of an arbitration agreement, upon the motion of either party to the agreement, provided that there is no issue regarding its creation.  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citing 9 U.S.C. § 2).  A court must therefore first determine:  (1) whether the parties entered into a valid agreement to arbitrate, and (2) whether the dispute falls within the scope of the arbitration agreement.  *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011); *see also Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010).

The Court must evaluate a motion to compel arbitration pursuant to the FAA under a standard similar to the standard for a summary judgment motion.  *See Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003).  "If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary."  *Id.* at 175 (citing 9 U.S.C. § 4).  However, the "party to an arbitration agreement seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid."  *Harrington v. Atl. Sounding Co.*, 602 F.3d 113, 124 (2d Cir. 2010); *accord Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000) ("[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration."); *Application of Whitehaven S.F., LLC v. Spangler*, 45 F. Supp. 3d 333, 342–43 (S.D.N.Y. 2014) ("Whether it argues that arbitration is improper because the arbitration agreement is invalid under a defense to contract formation, or asserts that the arbitration contract does not encompass the claims at issue, either way, the resisting party shoulders the burden of proving its defense." (internal quotation marks omitted)).  "If the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest

on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." *Oppenheimer & Co., Inc. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995).

"Arbitration agreements are considered contracts." *Nat'l Credit Union Admin. Bd. v. Goldman, Sachs & Co.*, 775 F.3d 145, 148 (2d Cir. 2014) (citing *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010)). Accordingly, "though the presumption in favor of arbitration is strong, the law still requires that parties actually agree to arbitration before it will order them to arbitrate a dispute." *Opals on Ice Lingerie v. Bodylines Inc.*, 320 F.3d 362, 369 (2d Cir. 2003). "[T]he ultimate question of whether the parties agreed to arbitrate is determined by state law." *Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002). As jurisdiction in this matter is based on diversity of citizenship, (Compl. ¶ 1), I am bound to apply New York choice-of-law rules. *See, e.g.*, *Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 393 (2d Cir. 2001) ("A federal trial court sitting in diversity jurisdiction must apply the law of the forum state to determine the choice-of-law." (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 497 (1941))). "Under New York choice of law rules, the first inquiry in a case presenting a potential choice of law issue is whether there is an actual conflict of laws on the issues presented." *Fed. Ins. Co. v. Am. Home Assurance Co.*, 639 F.3d 557, 566 (2d Cir. 2011) (citing *Fieger*, 251 F.3d at 393). "If not, no choice of law analysis is necessary." *Id.* Moreover, "where the parties agree that New York law controls, this is sufficient to establish choice of law." *Id.*[5]

---

[5] Although the JetSmarter Membership Agreement contains a Florida choice of law clause, (*see* 2015 Agmt. § 14; 2018 Agmt. § 17), Plaintiff insists that the forum selection clause "does not apply to Plaintiff's claims," which are not limited to contractual claims. (Pl.'s Opp'n 10; *see also id.* 16 n.7, 19 n.9 (arguing for application of New York law but finding no conflict between New York and Florida law).) ("Pl.'s Opp'n" refers to Plaintiff's Brief in Opposition to Motion to Dismiss and to Compel Arbitration, filed January 9, 2019. (Doc. 22.).) Defendants agree that "there is no meaningful conflict between Florida and New York law regarding the issues raised in [Plaintiff's] opposition papers," and in their reply papers, Defendants rely exclusively on New York precedent. (Defs.' Reply 2 n.1.) ("Defs.' Reply" refers to the Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss and Compel Arbitration, filed January 23, 2019. (Doc. 25.).) Accordingly, because the parties have agreed to the application of New York law, and because I also find no conflict between Florida and New York law with respect to the issues raised in the instant motion, I will apply New York law to the parties' dispute.

Under New York law, the party seeking arbitration bears the burden of proving that a valid arbitration agreement exists, *Am. Centennial Ins. Co. v. Williams*, 649 N.Y.S.2d 190, 191 (2d Dep't 1996), but need only prove the existence of a valid arbitration agreement by a preponderance of the evidence, *see Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*, 991 F.2d 42, 46 (2d Cir. 1993). "[T]o create a binding contract, there must be a meeting of the minds." *Highland HC, LLC v. Scott*, 978 N.Y.S.2d 302, 306 (2d Dep't 2014). However, it is settled New York law that "a party will not be excused from his failure to read and understand the contents" of a document. *Johnson v. Thruway Speedways, Inc.*, 407 N.Y.S.2d 81, 83 (3d Dep't 1978). The general rule under New York law is that "a party who executes a contract is considered bound by the terms of that contract." *Stern v. Espeed, Inc.*, No. 06 Civ. 958(PKC), 2006 WL 2741635, at *1 (S.D.N.Y. Sept. 22, 2006).

## IV.   <u>Discussion</u>

Defendants argue that because the JetSmarter Membership Agreement requires Plaintiff to arbitrate his claims, I should issue an order compelling Plaintiff to resolve the instant dispute through arbitration.[6] In deciding whether the parties' dispute is arbitrable, I must answer two questions: "(1) whether the parties agreed to arbitrate, and if so, (2) whether the scope of that agreement encompasses the claims at issue." *Holick v. Cellular Sales of N.Y., LLC*, 802 F.3d 391 (2d Cir. 2015). I conclude—as did Judge Engelmayer in a recent decision analyzing the same JetSmarter Membership Agreement—that "[b]oth requirements are clearly met here." *Porcelli*, 2019 WL 2371896, at *4.

---

[6] Alternatively, Defendants request that, if I am "not inclined to compel arbitration," I stay all further proceedings pending resolution of the Class Arbitration. (*See* Defs.' Br. 16.) ("Defs.' Br." refers to the Memorandum of Law in Support of Defendants' Motion to Dismiss and Compel Arbitration, filed December 6, 2018. (Doc. 10.).) Because I conclude herein that Plaintiff must arbitrate his claims, I need not address the issue of a stay pending resolution of the Class Arbitration.

### A.    *Agreement to Arbitrate*

Defendants have submitted extensive documentary evidence supporting the existence of a valid arbitration agreement between the parties.  This evidence includes a declaration from JetSmarter's Chief Technology Officer, Mikhail Kirsanov, who is "responsible for the development, implementation, and maintenance of the membership registration process of JetSmarter's software application."  (Kirsanov Decl. ¶ 1.)  As Kirsanov explained, in order to sign up for JetSmarter online, a prospective member must accept the terms and conditions of the Membership Agreement before paying his membership fee.  (*Id.* ¶¶ 4, 9.)  To do so, the prospective member "must click on a 'toggle button' next to the phrase:  'I ACCEPT TERMS AND CONDITIONS OF THE MEMBERSHIP AGREEMENT.'"  (*Id.*)  This text contains a hyperlink to the full JetSmarter Membership Agreement.  (*Id.* ¶¶ 5, 10.)  Unless the prospective member clicks the toggle button, he will be unable to pay his membership invoice.  (*Id.* ¶¶ 4, 6, 9.)  Defendants provided copies of Plaintiff's April 19, 2015 invoice—the date Plaintiff originally signed up for JetSmarter's services, (*id.* Ex. 1)—and Plaintiff's May 7, 2018 invoice— the date Plaintiff upgraded his JetSmarter membership, (*id.* Ex. 3)—which both reflect that Plaintiff clicked the box indicating his acceptance of the terms and conditions of the JetSmarter Membership Agreement.  Defendants also provided copies of the versions of the JetSmarter Membership Agreement in effect as of April 19, 2015, (2015 Agmt.), and May 7, 2018, (2018 Agmt.).  Both iterations of the Membership Agreement contain a clause specifying that "[a]ny claim or dispute between the parties . . . shall be resolved exclusively by binding arbitration." (2018 Agmt. § 18; *see also* 2015 Agmt. § 15 ("Any claim or dispute between the Parties . . . shall be resolved by binding arbitration . . . .").)

The Second Circuit has made clear that "clickwrap" agreements, such as the one at issue here, "can serve as valid consent to arbitrate because in checking a box the user must affirmatively assent to the terms of the agreement." *Porcelli*, 2019 WL 2371896, at *4 (citing *Meyer v. Uber Techs.*, 868 F.3d 66, 75 (2d Cir. 2017)); *see also Meyer*, 868 F.3d at 75 ("Courts around the country have recognized that [an] electronic 'click,' can suffice to signify the acceptance of a contract . . . ." (quoting *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1033–34 (7th Cir. 2016)).[7] I find that the evidence submitted by Defendants is sufficient to establish the existence of a valid arbitration agreement by a preponderance of the evidence. *See Progressive*, 991 F.2d at 46; *see also Porcelli*, 2019 WL 2371896, at *4 (reviewing similar documentation offered by JetSmarter and concluding that JetSmarter had "submit[ted] sufficient, indeed convincing, documentary evidence of a valid arbitration agreement between the parties").

Plaintiff's challenge to Defendants' evidence is unpersuasive. Plaintiff objects to Kirsanov's statement that because Plaintiff successfully paid his initial membership invoice, Plaintiff "must have" clicked on the toggle indicating his acceptance of the Membership Agreement; he argues that Kirsanov had "no actual knowledge" of whether Plaintiff in fact entered into the agreement. (*See* Pl.'s Opp'n 23–24.) Defendants correctly point out that, "[a]s with any clickwrap consumer agreement . . . the company does not sit next to the prospective member while they click the toggle button or check box on the computer screen"; yet, such agreements are nevertheless considered valid. (Defs.' Reply 9; *see also Meyer*, 868 F.3d at 75.) Given Kirsanov's position as JetSmarter's Chief Technology Officer—and the personal knowledge of JetSmarter's registration process that he developed while serving in that

---

[7] A "clickwrap" agreement, which "require[s] users to click an 'I agree' box after being presented with a list of terms and conditions of use," is distinguishable from a "browsewrap" agreement, which "'do[es] not solicit an explicit manifestation of assent.'" *Meyer*, 868 F.3d at 75 (quoting Juliet M. Moringiello, *Signals, Assent and Internet Contracting*, 57 Rutgers L. Rev. 1307, 1318 (2005)).

capacity—I find Kirsanov's step-by-step description of the process reliable. (*See* Kirsanov Decl. ¶¶ 1–7; *see also* Fed. R. Evid. 602 (requiring witness to have "personal knowledge" of any matter about which he testifies).) Moreover, Plaintiff has submitted no evidence of his own—in the form of an affidavit or otherwise—that would cast doubt on whether he consented to submit any dispute with Defendants to arbitration. In order to avoid arbitration, Plaintiff "may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." *Oppenheimer*, 56 F.3d at 358; *cf. Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (explaining that a party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts"). Plaintiff has failed to meet that standard here.

Plaintiff has also challenged the Membership Agreement's arbitration provision as both illusory and unconscionable. First, Plaintiff argues that the provision is not mutually enforceable, and is therefore illusory, because JetSmarter allegedly retains the right not to be bound by its obligations under the arbitration provision since the Membership Agreement permits JetSmarter to "amend or modify th[e] Agreement from time to time." (Pl.'s Opp'n 15–16 (quoting 2018 Agmt. at 1)); *see also Schlegel Mfg. Co. v. Cooper's Glue Factory*, 231 N.Y. 459, 462 (1921) ("Unless both parties to a contract are bound, so that either can sue the other for a breach, neither is bound.").) Second, Plaintiff argues that the provision is unconscionable because the contract envisioned that Defendants would provide flight services to Plaintiff in exchange for prepayment of a significant membership fee; however, Defendants refused to provide the promised services yet retained Plaintiff's funds. (Pl.'s Opp'n 21.)

Although the relevant section headers in Plaintiff's brief refer to the illusory quality and unconscionability of the "arbitration provision" specifically, (*see id.* at 15, 19), Plaintiff's

arguments clearly attack the validity of the JetSmarter Membership Agreement as a whole.  It is well established that "challenges to [a] contract as a whole, either on a ground that directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid, must be decided by an arbitrator."  *Bassett v. Elec. Arts, Inc.*, 93 F. Supp. 3d 95, 102 (E.D.N.Y. 2015) (internal quotation marks omitted); *see also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 446 (2006) ("[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator."); *Davimos v. JetSmarter, Inc.*, Civil Action No. 18-15144 (MAS) (DEA), 2019 WL 3082643, at *10 (D.N.J. July 15, 2019) (finding, in decision analyzing JetSmarter Membership Agreement, that any challenges to the Membership Agreement's "validity as a whole . . . must be decided by the arbitrator" (citing *Buckeye*, 546 U.S. at 446)).[8]  Accordingly, I find that the parties entered into a valid agreement to arbitrate.

## B. *Scope*

I next turn to the question of whether the Membership Agreement covers the claims raised in Plaintiff's Complaint.  The Supreme Court has determined that "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."  *Rent-A-Ctr.*, 561 U.S. at 68–69.  "[W]hen the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract."  *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 528 (2019).  In such instances, "a court possesses no

---

[8] Plaintiff's lone challenge specific to the arbitration provision is his argument that the provision was offered to him on a "'take it or leave it' basis."  (Pl.'s Opp'n 21.)  However, the Second Circuit has squarely rejected this argument, explaining that the fact that an individual "was offered [an] arbitration agreement on a 'take it or leave it' basis . . . is plain[ly] . . . 'not sufficient under New York law to render the [arbitration] provision procedurally unconscionable.'" *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 122 (2d Cir. 2010) (quoting *Nayal v. HIP Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566, 571 (S.D.N.Y. 2009)).

power to decide the arbitrability issue." *Id.* at 529. Here, the arbitration provision expressly delegates the issue of arbitrability to an arbitrator; namely, it provides "[a]ny claim or dispute . . . whether related to this Agreement, any of the Terms and Conditions, or the relationship or rights or obligations contemplated herein, including the validity of this clause**,** shall be resolved exclusively by binding arbitration." (2018 Agmt. § 18; *see also* 2015 Agmt. § 15 (containing substantially the same language).) I find that this language provides "clear and unmistakable evidence" of the parties' agreement to arbitrate arbitrability, *see First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (internal quotation marks omitted), and I therefore conclude that the issue of arbitrability is a matter for the arbitrator's review, *see Porcelli*, 2019 WL 2371896, at *4 (analyzing JetSmarter Membership Agreement and concluding that issue of arbitrability had been delegated to the arbitrator); *Davimos*, 2019 WL 3082643, at *5 (same).

Accordingly, because I conclude that the arbitration provision is valid and that the scope of the provision is a question for the arbitrator, Defendants' motion to compel arbitration is granted.

However, rather than dismiss this matter in its entirety, I will instead stay the action pending the completion of arbitration. The Second Circuit has made clear that staying—as opposed to dismissing—an action in which all claims have been referred to arbitration is the proper course. *See Katz v. Cellco P'ship*, 794 F.3d 341, 346–47 (2d Cir. 2015) (reversing district court's dismissal of action in which all claims had been referred to arbitration and explaining that "the text, structure, and underlying policy of the FAA mandate a stay of proceedings");[9] *see also*

---

[9] Although the defendant in *Katz*—unlike Defendants here—requested that the case be stayed pending arbitration, 794 F.3d at 343, Defendants make no attempt to distinguish *Katz* on that ground and, indeed, offer no compelling rationale for dismissing the proceedings as opposed to ordering a stay. (*See* Defs.' Br. 9 n.1 (citing a pre-*Katz* district court opinion, *Germosen v. ABM Indus. Corp.*, No. 13-cv-1978 (ER), 2014 WL 4211347, at *26 (S.D.N.Y. Aug. 26, 2014), for the proposition that I "ha[ve] the discretion to dismiss this action if all the issues raised are arbitrable").)

*Davimos*, 2019 WL 3082643, at \*12 (declining defendants' invitation to dismiss the action and instead staying case pending arbitration); *Porcelli*, 2019 WL 2371896, at \*4 (staying matter pending arbitration). I will therefore stay, rather than dismiss, the action pending arbitration.

### V.    <u>Conclusion</u>

For the foregoing reasons, Defendants' motion to dismiss and to compel arbitration is GRANTED IN PART and DENIED IN PART. Defendants' motion to compel arbitration is GRANTED and I refer Plaintiff's claims to arbitration. However, Defendants' motion to dismiss is DENIED and the matter is hereby STAYED pending the completion of arbitration. The parties are directed to submit a joint status letter 120 days from the date of this Opinion & Order, advising the Court as to the status of arbitration proceedings.

The Clerk of Court is respectfully directed to terminate the motion pending at Document 9.

SO ORDERED.

Dated: September 30, 2019
       New York, New York

Vernon S. Broderick
United States District Judge